UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

LEONARDO FAIRLEY,

                          Petitioner,

            v.

UNITED STATES OF AMERICA,

                          Respondent.
_____

08 Civ. 3823 (LBS)
06 Cr. 89 (LBS)

**MEMORANDUM &
ORDER**

SAND, J.

        Before the Court is Petitioner Leonardo Fairley's Motion to Vacate, Set Aside, or Correct

his Sentence pursuant to 28 U.S.C. § 2255, on remand from the Court of Appeals for the Second

Circuit.  The Second Circuit directed the Court to expand the factual record and issue a decision

addressing "whether [Petitioner's] counsel was ineffective for failing to move for dismissal of

the charges pursuant to the Speedy Trial Act [18 U.S.C. § 3161] . . . ."  *Fairley v. United States*,

No. 09-0669 (2d Cir. Jan. 25, 2010).  Upon due consideration, the Court finds that there was no

violation of the Speedy Trial Act that would have merited dismissal had such a motion been

filed.  Furthermore, the decision not to pursue the Speedy Trial motion was a deliberate, strategic

decision made after careful discussion between Fairley and his attorney, Margaret Shalley.

   **I.  Findings of Fact**

        **a.  The Offense Conduct**

        In January 2006, Leonardo Fairley was arrested on charges relating to a series of

gunpoint robberies committed in the Bronx between December 2005 and January 2006.  While

he ultimately pleaded guilty to seven robberies, during proffer sessions with the Government,

1

Fairley admitted to robbing an additional 17 businesses over the course of his crime spree.  Hr'g Tr. 60:7–14, Feb. 28, 2011.

Fairley targeted small, store-front businesses—several insurance brokerages and travel agencies, a jewelry store, and a convenience store—that were unlikely to have sophisticated security systems.  Presentence Report ("PSR") at ¶¶ 12–25.  In the course of the robberies, Fairley displayed a firearm and threatened to use it if victims did not cooperate.  PSR ¶¶ 12–25 ("Do you want to die?") ("Tell me where the money is, or I'll shoot someone.") ("You better shut the fuck up before I knock out your teeth.") ("Calm down before I kill somebody here.") ("I'll put a bullet through your head.").  Fairley engaged in physical violence, hitting a female employee on the head with his gun because she was talking on the phone, PSR ¶ 24, and punching a male store-owner in the mouth without provocation.  PSR ¶ 20.  He also humiliated his victims, forcing two male store-owners to remove their pants at gunpoint, PSR ¶¶ 20–21, and smacking a female employee's buttocks as he made her accompany him around the store at gunpoint.  PSR ¶ 15.

Fairley was initially indicted on four robberies that took place on December 10, 15, and 27, 2005, and January 5, 2006.  The evidence against Fairley at the time of his indictment on these robberies was strong.  The owner of the get-away car used in a robbery on January 5, 2006, Roxanne Palmer, told police that Fairley and co-conspirator Joseph Brooks had used her car that day.  Zornberg Decl. ¶ 34.  Seven victims of the four charged robberies who were shown photo arrays containing Fairley's photo positively identified him as the perpetrator.  *Id.*  Following his arrest, six more victims of the four robberies positively identified Fairley in lineups as the robber, though two others were unable to positively identify Fairley.  *Id.* ¶ 36.

2

The evidence continually grew stronger as the investigation progressed.  At lineups corresponding to a fifth robbery on January 3, 2006, three additional robbery victims positively identified Fairley as the perpetrator.  *Id.* ¶ 36.  In mid-February, a fingerprint recovered from the change drawer inside a cash register at the charged robbery on December 15, 2005 was determined to belong to Fairley.  *Id.* ¶ 37.  This conclusion was confirmed by a fingerprint expert hired by the defense.  Shalley Decl. ¶ 44.  The Government also discovered a video surveillance tape, taken from the scene of a sixth robbery on December 30, 2005, which clearly portrayed Fairley displaying a gun and rifling through the pockets of a customer in the store.  Zornberg Decl. ¶ 40; Shalley Decl. ¶ 12.  In October 2006, the Government secured the cooperation of Joseph Brooks, an accomplice during two armed robberies.  Zornberg Decl. ¶ 38.  At trial, Brooks would have testified that he and Fairley knew each other well and were both crack addicts, *Id.* ¶ 38(a); that Fairley recruited Brooks to act as a lookout during two armed robberies, *Id.*; that he helped Fairley to obtain a gun to use during a third robbery, *Id.*; that Fairley told Brooks that he targeted insurance stores because such stores were unlikely to have security cameras, *Id.* ¶ 38(b); that Brooks knew Dana Foster, with whom Fairley committed some of the robberies, *Id.*; that Brooks recruited Roxanne Palmer to drive the get-away car during one of the robberies, *Id.* ¶ 38(c); and that after Palmer warned Brooks that she had given Brooks' and Fairley's names to the police, he and Fairley began hiding from the police, *Id.* ¶ 38(d).

By the time the second superseding indictment was returned against Fairley, he was charged with 11 counts: one count of robbery conspiracy, five counts of robbery, and five gun counts.  Zornberg Decl. Ex. 25 (S2 Indictment).

**b.  Timeline**

On January 20, 2006, Fairley was presented before a federal magistrate judge on a criminal complaint charging him with counts relating to four robberies.  On January 30, 2006, Fairley was indicted on four counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and four counts of brandishing a firearm in furtherance of a robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  Zornberg Decl. Ex. 1 (Indictment).  Fairley was arraigned on February 1, 2006.  With the parties' consent, the Court granted a Speedy Trial exclusion until the next scheduled conference on March 29, 2006 in order to permit discovery.  Pretrial Conference ("PTC") Tr. 4:9–13, Feb. 1, 2006.  Immediately thereafter, the Court endorsed the Government's written request for a Speedy Trial exclusion, finding the ends of justice would be served by such a continuance because it allowed the Government to produce discovery and the parties to continue discussing a pre-trial disposition of the matter.  Zornberg Decl. Ex. 3.

On March 14, 2006, Richard Boulware, Fairley's court-appointed counsel, requested a four-week extension, an adjournment of the conference, and an "exclusion of time under the Speedy Trial Act until the rescheduled conference."  Zornberg Decl. Ex. 5.  The Court signed the attached proposed order and scheduled the conference for April 24, 2006.  Zornberg Decl. Ex. 6 (Order, Mar. 15, 2006).  However the proposed exclusion order contained a typographical error; it stated that time would be excluded through March 7, rather than April 24.

At a conference on April 6, 2006, Boulware sought to be relieved as counsel due to a conflict discovered by his office.  The Court appointed Martin Geduldig to replace Boulware and granted Geduldig's request for additional time to file pretrial motions.  PTC Tr. 2:10–4:6, Apr. 6, 2006.  The parties consented to a Speedy Trial exclusion from April 7 until the next scheduled conference on April 27, *Id.* at 4:13–20, and the Court signed an Order finding the ends of justice were served by such an exclusion because it would "allow newly appointed counsel to, among

4

other things, review discovery and consult with his client, and moreover, will allow the parties to discuss a possible disposition of this case." Zornberg Decl. Ex. 9 (Order, Apr. 10, 2006).

On April 10, 2006, the Government requested an adjournment and Speedy Trial exclusion in light of the superseding indictment it intended to file and the need to produce additional discovery regarding the new charges. The Court endorsed the letter and granted the exclusion until May 17, 2006. Zornberg Decl. Ex. 10. The superseding indictment was returned on April 13, 2006, adding an additional Hobbs Act robbery count and an additional § 924(c) gun count. Zornberg Decl. Ex. 11 (S1 Indictment).[1] Fairley was arraigned on the superseding indictment on April 20, 2006. At the arraignment, the parties again consented to exclude the time until the May 17 conference to permit the production and review of discovery related to the S1 Indictment. PTC Tr. 3:13–4:22, Apr. 20, 2006.

On May 15, 2006, Geduldig submitted a letter to the Court requesting an adjournment of the May 17, 2006 conference to further plea discussions that had been delayed because defense counsel was engaged in trial on another matter. Zornberg Decl. Ex. 13. The Court rescheduled the conference to June 22, 2006 but did not issue an order excluding the intervening time for Speedy Trial purposes.

At the June 22 conference, the Court scheduled trial for September 25, 2006 and excluded the time until that date in the interests of justice. Although Fairley objected to the exclusion of time and requested an earlier trial date, defense counsel said personal obligations prevented him from trying the case during July and most of August. PTC Tr. 4:8–24, June 22, 2006. Finding no earlier date on which all parties were available, and finding that the alternative

---

[1] Fairley was charged in a second superseding indictment with an additional count of Hobbs Act robbery conspiracy on October 18, 2006. Zornberg Decl. Ex. 25 (S2 Indictment).

option of appointing new counsel would not expedite matters, the Court continued with the September 25 date and excluded the time over Fairley's objection. *Id.* at 5:20–6:8. The Government submitted a follow-up letter advising the Court that its calculations showed 26 days remained on the Speedy Trial clock. Zornberg Decl. Ex. 15. On June 27, 2006, the Court filed a written order that the time between June 22 and September 25, 2006 be excluded. The Order stated that "[t]he interests of justice are served by this continuance because if time were not excluded, defendant would be forced either to proceed to trial with a lawyer completely unfamiliar with defendant's case, or the new attorney would need to obtain an extension of time in order to become familiar with the case." Zornberg Decl. Ex. 16 (Order, June 27, 2006).

On August 11, 2006, Fairley filed two *pro se* motions: one for discovery and one to dismiss the Indictment under the Speedy Trial Act. Zornberg Decl. Exs. 18, 19. During a conference held on August 16, the Court determined that Fairley was unhappy with his representation and provided Fairley with the option to continue with Geduldig's representation and proceed to trial on September 25, or to have new counsel appointed and further adjourn the trial date. PTC Tr. 4:6–14, Aug. 16, 2006. Fairley chose the latter. *Id*. at 5:16–6:14. The Court appointed new counsel, Margaret Shalley, rescheduled trial for November 13, 2006, and excluded the time until then without objection. *Id*. at 7:16–23, 9:13–16. The Court notified Shalley of Fairley's *pro se* motions and explained that the Court would take no action unless Shalley elected to renew them. *Id*. at 9:8–12. That same day, the Court filed an order excluding time in the interests of justice on the grounds that the continuance would allow the parties to discuss a possible disposition of the case and to prepare for trial, and that postponement of the trial date was necessitated by appointment of new counsel for defendant. Zornberg Decl. Ex. 21 (Order, Aug. 16, 2006).

6

Fairley and the Government engaged in plea negotiations and, on November 3, 2006, entered into an agreement in which Fairley agreed to plead guilty to seven robbery counts in violation of 18 U.S.C. § 1951 and one count of brandishing a firearm in furtherance of a robbery in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Zornberg Decl. Ex. 27 at 1–3. The parties stipulated that the guidelines range was 135 to 168 months, plus the statutorily mandated consecutive term of 7 years, for a total of 219 to 252 months. Fairley agreed that he would not file a direct appeal or litigate under 28 U.S.C. § 2255 and/or § 2241 any sentence within or below the Stipulated Guideline Range. *Id.* at 7–9. That same day, Fairley pleaded guilty to an eight count superseding Information pursuant to the plea agreement. Magistrate Judge Maas conducted a plea allocution in full compliance with Rule 11 of the Federal Rules of Criminal Procedure and determined that Fairley understood his rights. Plea Tr. 2:7–17:10, Nov. 3, 2006. This Court sentenced Fairley to a term of 234 months' imprisonment on March 14, 2007.

In 2007, following his sentencing, Fairley approached the government to proffer. Hr'g Tr. 50:23–52:12, 78:20–79:14, Feb. 28, 2011. Fairley informed the government of other robberies he had committed. *Id.* 51:11–13. However, the government ultimately declined his cooperation. *Id.* 79:7–14. On April 23, 2008, Fairley filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to § 2255.

### c. Discussions with Counsel

Shalley worked diligently in Fairley's defense. She met with Fairley at least eight times outside of the courthouse to discuss the case. Shalley Decl. ¶¶ 37, 42, 45, 49, 50. She petitioned the Court for appointment of a second CJA attorney and a private investigator to assist in Fairley's defense. *Id.* ¶¶ 40–43; Order, Sept. 11, 2006 (granting request for additional attorney); Endorsed Letter, Sept. 11, 2006 (granting request for private investigator). Shalley also hired a

7

fingerprint expert to examine the fingerprint recovered from the cash register at one of the robberies, which was determined to be Fairley's.  Shalley Decl. ¶ 44.   Upon the Court's instruction, Shalley investigated the potential Speedy Trial claim by conducting legal research and speaking to Fairley's previous attorneys, though she found that such a claim would likely be unsuccessful.  *Id.* ¶¶ 6–18; Hr'g Tr. 69:15–70:16, Feb. 28, 2001.  She discussed her findings, including the relevant Speedy Trial caselaw, with Fairley at meetings on September 18 and 20, 2006.  *Id.* ¶ 13.  She explained to Fairley that she found it extremely unlikely that the motion, if granted, would result in a dismissal with prejudice and that she thought it would negatively affect future plea negotiations if he decided not to proceed to trial.  *Id.*  Fairley instructed Shalley not to proceed with the Speedy Trial claim and to instead focus her efforts on challenging witness identifications.  *Id.* ¶¶ 33–36.

By letter to Shalley dated September 12, 2006, the Government made a plea offer, which Fairley rejected.  Zornberg Decl. Ex. 22.  On October 13, 2006, the Government advised Shalley via a series of letters that it intended to introduce fingerprint evidence and evidence of Fairley's flight from police officers prior to his arrest.  Zornberg Decl. Exs. 23, 24.  On or about November 1, 2006, the Government advised Shalley that it intended to introduce the accomplice testimony of Joseph Brooks at trial and reviewed his anticipated trial testimony with her.  Zornberg Decl. ¶ 38; Shalley Decl. ¶ 45.  That same day, Shalley visited Fairley and informed him that Brooks was cooperating with the Government.  She explained that, given the extensive evidence against him, she believed Fairley would be convicted at trial.  Shalley Decl. ¶¶ 46–47.

At Fairley's request, Shalley contacted the Government on or about November 1, 2006 to initiate plea discussions.  After negotiations with the Government, Shalley reviewed the plea offer and its consequences with Fairley on November 2 and 3, 2006.  Shalley Decl. ¶¶ 49–51.

8

After sentencing, she continued to represent Fairley in his efforts to have the sentence reduced by virtue of cooperation.  Hr'g Tr. 78:20–79:14, Feb. 28, 2011.

## II.  Discussion

The Second Circuit directed the Court to issue a decision as to "whether [Petitioner's] counsel was ineffective for failing to move for dismissal of the charges pursuant to the Speedy Trial Act, in light of *Parisi v. United States*, 529 F.3d 134, 139–40 (2d Cir. 2008), and *Zedner v. United States*, 547 U.S. 489 (2006)."  *Fairley v. United States*, No. 09-0669 (2d Cir. Jan. 25, 2010).  In particular, the Second Circuit noted that the Court should address "both the advice rendered to [Petitioner] by Margaret Shalley with respect to the options of entering a guilty plea or moving to dismiss and whether there was, in fact, a violation of the Speedy Trial Act that would have merited dismissal . . . ."  *Id*.  Because there was no Speedy Trial violation, this Court holds that Shalley was not ineffective for failing to move to dismiss the charges on that ground.

### a.  Speedy Trial Act Calculation

The Speedy Trial Act requires that a trial begin within 70 days of the filing of an indictment, or a defendant's initial appearance, exclusive of various periods enumerated in the statute.  18 U.S.C. § 3161.  In addition to the automatic exclusions, a court may grant a continuance in the interests of justice upon consideration of a series of factors, including the complexity of the case, the need to provide the parties with "the reasonable time necessary for effective preparation," and the concern that failure to grant additional time would result in a miscarriage of justice.  § 3161(h)(7)(B).  "If a trial does not begin on time, the defendant may move, before the start of trial or the entry of a guilty plea, to dismiss the charges, and if a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice."  *Zedner*, 547 U.S. at 499.

9

While the decision to grant an ends-of-justice continuance is discretionary, the court must "make[] on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial." *Zedner*, 547 U.S. at 498–99. Although the Speedy Trial Act is ambiguous as to when findings supporting an ends-of-justice continuance must be set forth, "the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance" and that "those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)." *Id.* at 506–07.

The Second Circuit has emphasized that, under *Zedner*, consent of the parties does not rid the court of its obligation to independently determine whether an exclusion serves the ends of justice. *Parisi*, 529 F.3d at 140. In *Parisi*, the district court had endorsed stipulations signed by both parties seeking an exclusion and laying out the grounds for the exclusion. While the Second Circuit found it unnecessary to rule on whether or not the endorsement was sufficient to constitute an independent determination, it noted that the designation of the document as a stipulation and the separation by asterisks of the court's "so ordered" signature line from the substantive portion of the document "tend[ed] to indicate an abdication of this responsibility by the court and an assumption of unwarranted authority by the parties." *Id*.

With respect to the timeline noted above, there are four periods of time potentially included in the Speedy Trial clock calculation. Two such periods are uncontested: January 31, 2006, the day following the indictment for which no exclusion was sought or granted (1 day); and May 18 through June 21, 2006, a period for which Geduldig sought, but the Court did not order, an extension of time to further plea discussions (35 days). Deducting these two periods

10

from the 70-day statutory period, the Government calculates that there were 34 unused days remaining on the Speedy Trial clock when Fairley pleaded guilty.  Gov't Mem. 48.

However, there are two periods that the Government considers excluded for which there are plausible arguments for inclusion.  First, the March 15 Exclusion Order signed by the Court contained a typographical error, stating that time would be excluded through March 7, rather than until April 24, 2006, the date of the next conference.  Zornberg Decl. Ex. 6.  The dates not excluded for other reasons are March 30 through April 5, for a total of 7 days.  The Government claims that this time period is nonetheless excludable because it was clearly the parties' and the Court's intention to exclude the period, particularly given that Boulware requested "an exclusion of time under the Speedy Trial Act until the rescheduled conference."  Zornberg Decl. Ex. 5.

"[W]here an order or judgment is unclear, a court retains inherent authority to interpret ambiguities."  *United States v. Spallone*, 399 F.3d 415, 421 (2d Cir. 2005); *United States v. Morrison*, No. 04 Cr. 699, 2006 WL 2482046, at *4 (E.D.N.Y. Aug. 25, 2006) (where oral Speedy Trial exclusion and written order memorializing that exclusion differed, intent of court governed).  However, courts are prohibited "from altering a judgment that is clear on its face, even if not reflective of the court's actual intent."  *Spallone*, 399 F.3d at 421.  Here, the Order, though a result of mistake, was not so ambiguous as to permit reinterpretation.  In fact, the Government, in its June 23, 2006 Speedy Trial calculation, took into account the 7 days lost due to the Order.  Zornberg Decl. Ex. 15.  Therefore, 7 additional days should be deducted from the Speedy Trial clock, for a total of 27 remaining.

Second, at a pretrial conference on June 22, 2006, the Court excluded the time until trial, scheduled for September 25, over Fairley's objection.  The Court then filed a written Order explaining that the exclusion served the ends of justice because Fairley would otherwise be

forced to proceed to trial with a new lawyer unfamiliar with the case, or the new lawyer would need to obtain an extension of time.  Zornberg Decl. Ex. 16.

The days not excluded for other reasons are June 23 through August 11, 2006.  While a court may not grant a continuance "because of general congestion of the court's calendar," § 3161(h)(7)(C), it may do so where the failure to grant a continuance "would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation . . . ."  § 3161(h)(7)(B)(iv). Here, Geduldig advised the Court that he was unavailable during the month of July and most of August.  While the Court considered appointing new counsel to permit an earlier trial date, the Court found on the record that such appointment would almost certainly have resulted in further delay, as new counsel would require reasonable time to familiarize herself with the facts of the case.  Zornberg Decl. Ex. 16 (Order, June 27, 2006).  Thus the Court properly articulated that the ends of justice were served by granting the continuance, as were the interests of the public and the defendant in a speedy trial.  This period was properly excluded.

The remaining periods were properly excluded either automatically under the statute or because they satisfied the conditions for ends-of-justice exclusions.  For the ends-of-justice exclusions granted on February 1, April 6, April 20, and August 16, the Court discussed the basis for each exclusion in open court.  Zornberg Decl. Exs. 2, 7, 12, 20.  For the exclusions granted on April 6 and August 16, the Court signed written Orders granting the exclusion.  Zornberg Decl. Exs. 9, 21.  The Orders set forth the reasons reflected in the in-court discussions and purport to be the findings of the Court and no other party.  For two exclusions, February 1 and April 10, the Court endorsed letters sent by the parties requesting exclusion of time and

12

identifying the reasons exclusion was warranted.  Zornberg Decl. Exs. 3, 10.  These Orders differ

from the so ordered stipulations criticized in *Parisi*, in which it was "not entirely clear whether

the district court made its own ends-of-justice findings or even whether it signed off on those to

which the parties had purported to stipulate."  *Parisi*, 529 F.3d at 140.  Here, the in-court

discussion and the location of the signature make clear that the Court was not simply signing off

on the parties' agreement but intended to independently adopt the reasoning contained in the

letters to the Court.

Because 27 days remained on the Speedy Trial clock at the time Fairley pleaded guilty,

there was no Speedy Trial violation, and any motion seeking dismissal on that basis would have

been denied.

### b.  Dismissal Would Have Been Without Prejudice

Had there been a Speedy Trial violation in this case, any dismissal would have been

without prejudice.  The Speedy Trial Act provides courts with four factors to consider in

determining whether or not charges should be dismissed with prejudice, including, among others,

"the seriousness of the offense; the facts and circumstances of the case which led to the

dismissal; and the impact of a reprosecution on the administration of this chapter and on the

administration of justice."  18 U.S.C. § 3162(a)(2).  Consideration of these factors clearly

militates in favor of dismissal without prejudice to bring new charges.  Fairley was charged with

a series of serious, violent crimes for which he faced life imprisonment.  *See United States v.*

*Wells*, 893 F.2d 535, 538 (2d Cir. 1990) (holding offense was serious where defendant had

displayed a weapon and was previously convicted of exact same offense).  The length of the

delay was not so serious as to result in prejudice to the defense.  *United States v. Taylor*, 487

U.S. 326, 340 (1988) (noting delay becomes concern where it results in "prejudice to the

defendant, in terms of his ability to prepare for trial or the restrictions on his liberty"). Trial was scheduled on November 13, 2006, nine months following Fairley's indictment, with most of the delay attributable to the need for both parties to review discovery relating to the 11-count indictment and to the two substitutions of defense counsel. *Cf. id.* at 340 (holding petitioner's "responsibility for the failure to meet the timely trial schedule in the first instance [is] certainly relevant . . . and weigh[s] heavily in favor of permitting reprosecution."). Nor is there evidence of bad faith or a pattern of neglect by the government. *Wells*, 893 F.2d at 539 ("To dismiss an indictment with prejudice for a violation of the Speedy Trial Act, the court should specifically describe the Government's conduct and find that conduct to be more than 'an isolated unwitting violation,' be it a 'truly neglectful attitude,' 'bad faith,' a 'pattern of neglect,' or other serious misconduct." (quoting *Taylor,* 487 U.S. at 338–39, internal citations omitted)).

### c.   Ineffective Assistance of Counsel

Where a defendant pleads guilty pursuant to a plea agreement, the terms of which bar appeal, the defendant forfeits all claims relating to events that occurred prior to his plea. *Parisi*, 529 F.3d at 138. Such waivers extend to Speedy Trial and ineffective assistance of counsel claims, unless the petitioner's allegations attack "the validity of the process by which the waiver has been procured." *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002). In *Parisi*, the Court found that the petitioner's allegation that his "attorney was ineffective in advising him to accept the plea agreement rather than advising him to move to dismiss the indictment with prejudice based on alleged Speedy Trial Act violations" was sufficient to overcome a waiver of appeal. *Parisi*, 529 F.3d at 139.

Giving his *pro se* pleadings a liberal construction, Fairley's § 2255 petition makes this argument, to wit, that Shalley was ineffective in failing to advise him to pursue dismissal of the

14

indictment based on a violation of the Speedy Trial Act.  However, because there was no

underlying violation that would have merited dismissal, Fairley's ineffective assistance of

counsel claim must fail.  *Boyd v. Hawk*, 965 F.Supp. 443, 450 (S.D.N.Y.1997) ("If a speedy trial

motion likely would have been unsuccessful, trial counsel's failure to make the motion does not

constitute ineffective assistance.") ( *Liriano v. United States*, Nos. 08 Civ. 5568 (DAB), 08 Civ.

5634 (DAB), 05 Cr. 253 (DAB), 03 Cr. 227 (DAB), 2009 WL 2972519, at *5 (S.D.N.Y. Sept.

16, 2009) ("because he had no meritorious claim, neither of the prongs of *Strickland* can possibly

be met, and there was no ineffective assistance of counsel in advising Petitioner to plea rather

than to move for dismissal based upon the Speedy Trial Act").  Even if the Speedy Trial claim

was viable, this Court finds that Fairley's decision to forego such a claim was deliberate and was

made prior to and apart from the plea negotiations, following discussions with counsel.  It thus

does not attack the validity of the process by which the plea was obtained.

    After researching the potential Speedy Trial claim, Shalley rightly determined and

explained to Fairley that such a claim would likely be unsuccessful because at least 16 days

remained on the Speedy Trial clock.  She also rightly concluded and explained to Fairley that, in

the event dismissal was granted, the motion would result in a dismissal without prejudice.  These

determinations and recommendations by counsel were plainly reasonable and thus thwart

Fairley's allegations of ineffective assistance.  *Wells v. United States*, 07 Civ. 1740, 2010 WL

363339, at *6 (D. Conn. Jan. 25, 2010) (holding counsel was not ineffective because his "advice

to [petitioner] to accept the favorable plea agreement rather than move to dismiss the indictment

was a reasonable strategic decision based on a justifiable conclusion that even if the motion were

granted, it would likely be granted without prejudice to re-prosecution because there were no

factors that favored a with-prejudice dismissal").  Upon learning the merits and strategic

consequences of this approach, Fairley predictably instructed Shalley to instead focus her efforts on challenging witness identifications.

Fairley's claim that he did not, and would not, instruct counsel to forego the Speedy Trial motion is simply not credible.  Fairley consistently expressed his desire to proceed to trial as quickly as possible.  PTC Tr. 4:21–24, June 22, 2006; Hr'g Tr. 22:12–19, 78:3–9, Feb. 28, 2011. He stated in his § 2255 petition that his primary Speedy Trial concern was that "the delay jeopardized the defense by allowing the Government to add additional charges," and "ultimately exposed the petitioner to more charges."  Pet'r's Traverse Gov't's Answer at 8.  Fairley's suggestion that he would have moved to dismiss, even without prejudice, because the extra time might "shake something loose from the tree" or allow him to "get some discovery," Hr'g Tr. 35:13–24, Feb. 28, 2011, directly contradicts his prior concern that additional delay would permit the Government to augment the evidence and claims against him.  Conversely, Fairley's decision not to proceed with the Speedy Trial claim and to instead focus on challenging the identification of witnesses is entirely consistent with his continued skepticism about the lineups, Hr'g Tr. 10:24–25–11:1–6, Feb. 28, 2011; Def. Mot. Exclude Identification; Pet'r's Mot.Vacate at 2–4, and his claims that he was acquitted because of failure of identification in a prior case. Hr'g Tr. 12:6–14, Feb. 28, 2011; Shalley Decl. ¶ 38.

Furthermore, Fairley never hesitated to independently raise the Speedy Trial issue, despite representation by counsel.  Fairley objected to a Speedy Trial waiver at the June 22 conference, subsequently filed a *pro se* motion raising the claim, and again raised the claim in his § 2255 Petition.  It is thus implausible that Fairley would drop the Speedy Trial issue—knowing that he potentially faced more than 100 years in prison—without discussing the merits of the claim with his attorney, with whom he met at least eight times prior to entering his plea.  While

Fairley might have insisted on a Speedy Trial motion if he was told that such a motion would likely be granted, the record shows that counsel made clear to him that this was not a viable option.

Fairley's disregard for the truth has been a consistent theme of the proceedings before this Court.  At the February 2011 hearing, Fairley testified that he did not commit the seven robberies to which he pleaded guilty in November 2006.  Hr'g Tr. 56:57.  He claimed to have falsely testified to his guilt before Judge Maas because that's "what I was told to do" as part of "the agreement that was struck with your office and my attorney."  *Id.* at 56:1–10.  Almost immediately thereafter, he admitted to the Court that he had in fact committed those robberies, and that he had truthfully admitted to those and 17 other robberies during his proffer sessions with the government.  *Id.* at 59:12–60:14.

Fairley also gave contradictory testimony regarding his relationship with Shalley and his other attorneys.  During cross-examination at the February 28, 2011 hearing, Fairley was confronted with the transcript of his plea in which he had testified that he was satisfied with Shalley's representation and the advice she had given him.  Hr'g Tr. 43:8–44:23.  Fairley refused to tell the Court whether his testimony was true or false, but rather blamed his statements on his counsel and on the Government.  *Id.* at 43:8–11 ("That was part of the agreement."), 43:21–24 ("I'm not saying I lied.  What I'm saying to you is that I was instructed to say that by my attorney."), 44:16–23 ("I was told to say that by my lawyer.").  Shortly thereafter, Fairley admitted that he had been happy with Shalley's representation and did not become unhappy until after he thought he had a speedy trial claim that was not asserted.  *Id.* at 64:3–9.  As to Boulware's representation, Fairley testified that Boulware did not review the indictment with him.  Hr'g Tr. 7:15–19, Feb. 28, 2011.  Yet at the arraignment, Fairley acknowledged in open

17

court that he had received a copy of the indictment, did not need it read, and understood the charges in each of Counts 1 through 8.  PTC Tr. 2:17–3:1, Feb. 1, 2006.  Fairley's opportunistic testimony in seeking to overturn his plea and reduce his lengthy prison sentence lacks the credibility necessary to overshadow the extensive evidence to the contrary.

### III. Conclusion

For the reasons set forth herein, Petitioner's § 2255 petition is dismissed.  In accordance with the Second Circuit's Mandate, jurisdiction over the appeal will be automatically restored to the Second Circuit upon Petitioner's notification to the Clerk of the Court for the Second Circuit within sixty (60) days of this decision.

SO ORDERED.

Dated: March 22, 2011
      New York, NY

                                        U.S.D.J.

18